## Elmore's Estate.

*Wills—Construction—Annuities—Legacies—Insufficient assets.*

Where an estate of a testator is insufficient to pay legacies in full, and also to provide for annuities to his only blood kin, and it appears from the will as a whole that his blood kin were the objects of his first consideration, the whole estate or so much of it as may be necessary will be set aside to pay the annuities.

Argued March 14, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 60, March T., 1928, by Mathilda Hinley, known also as Mathilda Hindman, from decree of O. C. Allegheny Co., June T., 1927, No. 403, dismissing exceptions to adjudication in estate of John Elmore, deceased. Affirmed.

Exceptions to adjudication of MITCHELL, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Mathilda Hinely, legatee, appealed.

*Error assigned* was decree, quoting it.

*J. L. Schoenberg* and *W. M. Ewing,* for appellant.— The legacies given under the various paragraphs of the will are general legacies, although testator calls them specific legacies.

The general legacies given by testator are of such a nature as would make them a charge upon the land, which is not specifically devised: Ranney v. Byers, 242 Pa. 450; Reel's Est., 266 Pa. 221; Forsythe's Est., 81 Pa. Superior Ct. 347; Bauerlein's Est., 59 Pa. Superior Ct. 647.

*Charles W. Jones,* with him *Robert T. Reineman,* for appellees.

OPINION BY MR. JUSTICE FRAZER, April 9, 1928:

John Elmore died in 1926, leaving a will in which he directed his executor "as soon as conveniently may be" to sell all his real estate. In the next paragraph of his will he directed his executor "as soon as possible after my death to start to pay out of the income of my estate the sum of $400 each and every month to my sister, Jane Burnett, the same to continue only for and during the term of her natural life." In the fifth paragraph he directed his executor "as soon as possible after my death to start to pay out of the income of my estate the sum of $250 each and every month to each of my cousins, to wit: Margaret Leech, Mary Leech and Annie Leech," and to the survivor of them, "said payments of $250 each and every month to continue to each for and during the term of her natural life." In paragraph 12 testator directed his executors "as soon as conveniently may be after my death, to expend each and every month the sum of $25 for the benefit of my brother, Edward Elmore, as long as he lives," and in the seventeenth paragraph he provided that "for the purpose of paying the legacies aforementioned to my sister, Jane Burnett, to my brother, Edward, and to my cousins, Margaret Leech, Mary Leech, and Annie Leech, I hereby order and direct my executor, hereinafter named, to set aside a sum of money out of the income or sale of my personal and real property sufficient in the opinion of my executor and my attorney to create an income large enough to pay the aforementioned legacies." Other paragraphs in the will contained gifts of cash to various individuals and charities. Paragraph 19 provides that "all my estate of any nature and kind whatsoever, remaining after the payment of all my debts, legal costs and charges, and specific legacies aforementioned, shall become part of and constitute my residuary estate," and this residuary estate, after the termination of the life interests, was, under paragraph

18, to be distributed among various charitable institutions.

Testator's estate was insufficient to pay all legacies, the amount remaining after payment of debts not being sufficient to pay the annuities in full. Certain of the legatees claimed that all legacies, including the annuities, should abate pro rata. The court below, however, directed the entire amount to be turned over to the trustees to secure payment of the annuities. This appeal is by one of the legatees, omitted from the distribution.

The general rule, as provided in section 20 of the Fiduciaries Act of June 7, 1907, P. L. 447, is that where the estate is insufficient to pay all the pecuniary legacies in full, they shall abate pro rata unless it shall be otherwise provided by the will. This is merely a restatement of the rule as it existed at common law, which likewise, recognized the right of the testator to provide against deficiency of assets by giving pro rata to some of the objects of his bounty to the exclusion of others. As in all other cases of construction of wills, the question of intention prevails, and when the intent of testator is manifest to give one legatee a preference over others, such intention must prevail: Appeal of University of Pennsylvania, 97 Pa. 187, 200.

Looking at the will as a whole, and construing it in view of the situation of testator and the objects of his bounty, we are of the opinion that the court below was correct in the conclusion reached. Testator was unmarried and his nearest relatives were his sister and brother and the three cousins mentioned. Payment of the annuities were to begin "as soon as possible" and "as soon as conveniently may be" after his death, and for the purpose of securing such payments, testator expressly directed his executor to set aside, either out of the income or from the proceeds of the sale of his personal or real property, such sum of money as would be sufficient to pay the annuities. He thus indicated an intention that these particular "legacies," as he

called them, be taken care of first. This is consistent with his direction that the payment of the annuities begin "as soon as possible" after his death. His primary object appears to be to provide a life income for his nearest blood relations, thus putting them in a class by themselves and entitling them to first consideration in event of a deficiency of assets.

The decree of the court below is affirmed at appellant's costs.