## Chilton's Estate

Before Gest, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the following extracts from the adjudication of

LAMORELLE, P. J., Auditing Judge.—Harris J. Chilton, who died June 18, 1917, by his will and the first three codicils thereto made a bequest of silverware, etc., which articles did not form a part of the estate at the death of testator, gave certain annuities, and made certain pecuniary bequests. He gave the residue in trust to distribute the income each year to the deserving poor of the City of Philadelphia.

Inter alia, by the third codicil, he gave his wife an annuity of $3000 for life and devised her premises No. 3935 Locust Street for life.

By the fourth codicil he gave George Henderson and the Directors of the Mercantile Library of Philadelphia each $10,000. Both legacies were directed to be paid one year after death. The other legacy given thereby was revoked by the fifth codicil. After making these bequests, testator gave the residue of his estate in trust to pay the net income therefrom unto his wife, Annie Hack Chilton, for life, and after her death or remarriage to pay the net income to his sister, Miss Anna Chilton, if she survived the wife, for life, for the purpose of maintaining the home of testator, No. 3935 Locust Street, and directed that his executors and trustees should allow said sister to live, during her natural life, at said home after the death of his wife.

By the fifth codicil, he gave an annuity of $300 to Miss Sallie Sisselberger.

Gummey, J., who filed the adjudication upon the executor's account, confirmed nisi April 24, 1918, held that all previous dispositions made in favor of the wife were superseded by the provisions of the fourth codicil; and he apparently considered that the legacies mentioned in the will and first three codicils were payable at the death of the wife and sister, for he awarded out of the principal to George Henderson and to the Directors of the Mercantile Library of Philadelphia each $10,000, and the residue to the Girard Trust Company in trust to pay to Sallie Sisselberger her annuity of $300 and the remaining net income, and, upon the death of the annuitant, the whole thereof to Annie Hack Chilton for life or until her remarriage, and upon her death or remarriage to

pay said income to Anna Chilton, if then living, with remainder over upon the death of the cestuis que trustent to those thereunto entitled.

Gummey, J., in his adjudication, calls attention to the fact that the fourth codicil makes no disposition of the corpus upon the death of the survivor of said wife and sister, and states that "upon the termination of the life estates questions of distribution will arise which, however, are not now before the court."

Sallie Sisselberger, the annuitant, died November 3, 1930; Annie Hack Chilton, the widow, died October 25, 1931; and Anna Chilton, the sister, died March 14, 1932. The account is filed because of the termination of the trust.

The question now before the court is as to the disposition of the corpus of the fund awarded by said adjudication.

The amount on hand is insufficient to pay all the bequests in full. The first question that arises is whether certain legacies have priority over others. The eleventh item of the third codicil provides as follows: "If any part of my Will fails, *owing to lack* of *money,* I desire, this *codicil,* to be carried out, as my last wishes, as it is my *matured thought,* written by myself and, perhaps, by a later codicil I may have a Lawyer, draft a better one. Life is *uncertain,* so I place this with my will, as a part of the same." While the thought is somewhat awkwardly expressed, the auditing judge is of opinion that testator intended that the legacies mentioned in the third codicil should have priority over those mentioned in the will and the first and second codicils, and he so rules.

By the third codicil, testator gave to Ethel B. Sangster, of Baltimore, an annuity of $250, and to Miss Edna Tatnall Warner an annuity of $250, coupled with the direction in each instance that the principal thereof should on the death of the annuitant revert to the residuary estate. He also gave $10,000 to Harry M. Nitzel and a similar amount "to the Mercantile Library Company of Philadelphia, now on Tenth St. near Chestnut, provided, the Directors, accept the same, for the purpose, of holding the *present site,* for at least fifty years, from the date of my death, as I consider, this site, a fair one for a Peoples Library and Meeting Place for Chess and Reading, and, I want this *money used,* to furnish a Conversation Room for Gentlemen, as well as Ladies, who are members of the Library, in *good standing.*" . . .

With respect to the bequest of $10,000 to the Mercantile Library Company of Philadelphia, it is contended that this bequest is an absolute and unconditional one. In the brief submitted, the language is treated as if a condition subsequent had been created, and it is urged, in view of the fact that there is no limitation over, that the gift is absolute and unconditional. In the opinion of the auditing judge, however, the gift is made conditional on the acceptance of the same for the purposes therein indicated, to wit: that of holding the present site for at least fifty years from the date of the death of testator and the furnishing of a conversation room for gentlemen as well as ladies who are members of the library in good standing. A condition precedent is created, and unless the library accepts the gift for the purposes named, the bequest fails and becomes part of the residue of the estate. The absence of a limitation over, however, shows that if the library accepts the gift it is entitled to receive the same absolutely. While the language differs somewhat from the ordinary case, it is analogous, for example, to a gift to a hospital for the purpose of establishing a free bed, or a gift to a church for the purpose of a memorial window. It is the common practice of this court in such case to award the amount bequeathed absolutely, but to require the legatee to file with the court an acceptance of the gift for the purposes indicated by testator. As the auditing judge understands, the directors of the Mercantile Library Company are willing to accept the gift

for the purposes indicated; and the auditing judge, therefore, hereinafter awards the same to the Mercantile Library Company. . . .

The next question to be considered is how the balance shown by the account is to be distributed. The balance of principal and income shown by the account is approximately $112,000. This balance is almost entirely composed of securities. The securities consist of 111 shares of stock of the Cambria Iron Company, appraised at $4995, and the balance consists of bonds and mortgages secured by real estate. It is probable that a revaluation of the securities as hereinafter ordered will show a depreciation. The bequests, disregarding those that are declared void by this adjudication, amount to $95,000. The annuities amount to $2850. Included in the aggregate sum of the pecuniary bequests are the legacy to the Mercantile Library Company of $10,000 and the legacy of like amount to Harry M. Nitzel. These two legacies, as already indicated, are entitled to priority under the terms of the third codicil, and entitled to a like priority is an annuity of $250 to Ethel B. Sangster and an annuity of $250 to Miss Edna Tatnall Warner. With respect to the annuities, it is either expressly or impliedly directed that a sum sufficient to produce the annuities shall be set aside and, when the annuity ceases, that said sum shall revert to the residuary estate.

From an examination of the securities composing the balance, it seems probable that a revaluation of them will show an amount in excess of that which will be required to pay the two legacies of $10,000 each given by the third codicil and to set aside a fund sufficient on a three per cent. basis for the two annuities of $250 each, given by the third codicil. If the contrary should prove the case, then the principles hereinafter laid down can be applied in determining how the distribution shall be made as between the two pecuniary legacies of $10,000 each and the two annuities. We will assume that there will be a balance for distribution after paying the two legacies of $10,000 each and setting aside a sum sufficient to produce the annuities of $250 each.

It is obvious that there is not enough on hand to pay the pecuniary bequests in full and also to set aside a sum sufficient to produce the amount required to pay the nonpreferred annuities, which amount to $2350; and the question arises how distribution as between the pecuniary bequests and the annuities shall be made. The auditing judge has been unable to find any case in Pennsylvania which lays down a clear and definite rule on the subject.

In Appeal of the Trustees of the University of Pennsylvania, 97 Pa. 187, 200, the Supreme Court said:

"An annuity charged on the personal estate is a general legacy, and in cases of deficiency all annuities and legacies abate ratably, for since they cannot all be paid in full, they shall all abate ratably. . . . This rule is subject to exceptions, for there are cases where some annuities and legacies are to be paid in priority to others; but the onus lies on the party seeking priority to make out that such priority was intended by clear and conclusive proof. . . . If the chances of deficiency are anticipated and provided for by the terms of the will, then the directions of the testator will govern. It is always a question of intention, and when the intent of the testator is manifest to give one general legatee priority over others, that intention shall prevail. . . . No priority will be allowed where the expressions of the will are ambiguous."

In the instant case, testator, as shown by the language of the third codicil, thought that there might be a deficiency of assets, and he expressly provided what legacies and annuities should have priority. As to those not mentioned in the third codicil, it must be presumed that he intended the general rule of law to apply that legacies and annuities should abate pro rata. The auditing judge

is of opinion that Elmore's Estate, 292 Pa. 571, cannot be considered an authority showing that testator in this case intended to give the annuities priority over the pecuniary bequests. In that case, it appears that testator was unmarried and that his nearest relatives were his sister and brother and three cousins. He gave certain annuities to these relatives to begin "as soon as possible" and "as soon as conveniently may be" after his death, and for the purpose of securing such payments, testator expressly directed his executor to set aside out of the income or from the proceeds of sale of his personal or real property such sum of money as would be sufficient to pay the annuities. The Supreme Court said:

"He thus indicated an intention that these particular 'legacies,' . . . be taken care of first. This is consistent with his direction that the payment of the annuities begin 'as soon as possible' after his death. His primary object appears to be to provide a life income for his nearest blood relations, thus putting them in a class by themselves and entitling them to first consideration in event of a deficiency of assets."

In this case only one of the annuities was given to a relative. There is no direction with respect to the annuities that payment shall be made as soon as convenient or practical. A mere direction to set aside a sum for the payment of the annuity does not show that testator intended that the annuity should have priority over a pecuniary bequest: see Appeal of the Trustees of the University of Pennsylvania, supra; and this is also English law: see Todd v. Bielby, 27 Beav. 353, and In re Metcalf, [1903] 2 Ch. 424.

The English rule seems to be to ascertain the present value of the annuity based upon the expectancy of the life of the annuitant. The percentage that the annuitants and the pecuniary legatees are entitled to is arrived at by ascertaining what the pecuniary bequests and the present values of the annuities amount to. The balance for distribution is divided by such sum. The court distributes to the pecuniary legatee the pro rata of his legacy and to the annuitant the pro rata of his annuity. This rule enables the court to make an immediate distribution.

This method of distribution does not carry out the intention of testator that the pecuniary bequests shall be paid immediately and that the annuitants shall receive annual payments instead of a lump sum. There is the further objection that the annuitant will receive, in the event that he dies before the expiration of his expectancy of life, more than it was intended he should have, and that he will receive, if he outlives his expectancy of life, less than was intended.

There is another feature in this case which was not present in the English cases. The number of payments that it will be necessary to make to the Mercantile Library and Franklin Chess Club cannot be ascertained. No one can tell when they will disband, and it is, therefore, impossible to determine how much they will become entitled to, and without that data, no present value can be determined.

The direction of testator that sufficient funds shall be set aside for the purpose of producing the respective annuities, in the opinion of the auditing judge, must be complied with. To that extent, at least, Elmore's Estate, supra, is an authority.

The English rule is founded on convenience; and it has been adopted, apparently, because of the difficulty of determining what a proper mode of computation is, and, as just indicated, it cannot be applied to the annuities given to the Mercantile Library Company and the Franklin Chess Club.

It is clear that testator primarily intended that the annuities should be paid out of the income of the fund set aside to pay them; and that the principal

should be used for the purpose of paying the pecuniary bequests; and, if there should prove to be any excess, that it should fall into the residue of the estate.

Whatever balance remains, after satisfying the bequests contained in the third codicil, in the opinion of the auditing judge, should be distributed as follows: The balance on hand as ascertained by revaluation of the securities is to be divided by the aggregate of the pecuniary bequests, $75,000, and that will give us the percentage that each pecuniary bequest is entitled to and the percentage that each annuitant is entitled to. Sufficient funds on a basis of three per cent. must be set aside for the payment of the reduced amount of the annuities.

The result will be that the testator's intention that the pecuniary bequests shall be paid immediately cannot be carried into effect, but, as already indicated, this intention is subordinate to the intention that the principal necessary for the payment of the annuities shall be set aside.

In the future there may be accumulations of income over and above the amount required for the payment of the annuities, and as the annuities cease by reason of death or otherwise, principal will be released and can be used in part payment of the pecuniary bequests. When that situation arises, it may be that a recalculation of the percentage to which the pecuniary bequests and annuities are entitled to may become necessary. It is not the policy of the court to decide questions in advance of the time of distribution. The rule laid down will suffice for the present.

What the auditing judge desires to make clear is that, if, in the future, conditions change to such an extent as to make a modification of the rule desirable, any party in interest shall have the right to ask for a modification. . . .

The account shows a balance of principal, from personalty, $110,479.73, and from realty, $900. As already stated, this balance is almost wholly composed of securities. The accountant will have the securities reappraised; and the balance thus ascertained, and composed as set forth in the account, is awarded: to the Mercantile Library Company, $10,000; to Harry M. Nitzell, $10,000; to the accountant, $8333.33 in trust for the purpose of paying out of the income an annuity of $250 to Ethel B. Sangster; to the accountant, $8333.33 in trust for the purpose of paying out of the income an annuity of $250 to Mrs. Henry R. Bringhurst, nee Edna Tatnall Warner; and the rest as follows: to the accountant in trust, the respective sums required to pay the respective annuities as reduced upon a three per cent. basis.

*Edgar S. McKaig*, for Home Missionary Society, exceptant.

*W. Hobart Porter*, for Estate of Mary Ann Messinger et al., exceptants.

*Chester N. Farr, Jr.*, for Mercantile Library, exceptant.

GEST, J., December 2, 1932.—The exceptions to the adjudication raise two questions:

1. The testator bequeathed $10,000 to the Mercantile Library Company, "provided, the Directors, accept the same, for the purpose, of holding the *present site*, for at least fifty years, from the date of my death, as I consider, this site, a fair one for a Peoples Library and Meeting Place for Chess and Reading, and, I want this *money used*, to furnish a Conversation Room for Gentlemen, as well as Ladies, who are members of the Library, in *good standing*." The above italics are stated as being so used in the will.

The auditing judge ruled that this gift was conditioned on the acceptance of the same for the purposes indicated, as above stated, and said a condition precedent was created, and unless the library accepted the gift for the purposes

named, the bequest should fail and become part of the residue of the estate. The library company filed exceptions on the ground that the condition of the gift was subsequent and without limitation over, so that it was, therefore, equivalent to an absolute and unconditional bequest.

We are of opinion that the exceptions are well founded, so far as they relate to the present site of the library being held for at least fifty years from the date of the testator's death: Rankin Church v. Edwards, 204 Pa. 216. So far, however, as concerns the obligation of the library company to use the bequest to furnish a conversation room for the members of the library, our opinion is that this provision is valid, and that the library company will be bound to comply with this direction of the testator, which we understand it is willing and intends to do.

2. The second question presents a real difficulty. The testator bequeathed nonpreferred legacies now payable of $75,000, and also nonpreferred annuities amounting to $2350 per annum, for the protection of which, upon a capitalization of three per cent., according to the usual practice of this court, there would be required the setting aside of a fund of something over $75,000. The fund available for distribution, however, after deducting the preferred pecuniary legacies and a fund for the protection of the preferred annuities, is composed of securities the value of which is less than the amount appearing by the account, and it may be, as stated, that the real present value is only about $50,000, though perhaps it is more. In addition, the estate will be increased in time by $20,000 from the estate of Anna H. Wilstach, and, besides, the estate holds certain real estate, No. 3935 Locust Street, from the future sale of which another fund will be obtained. While the auditing judge directed that the securities embraced in the present account be revalued, and a schedule of distribution be filed showing such reappraisement, this as yet has not been done.

The auditing judge held, and all parties agree, as do we, that the nonpreferred pecuniary legacies and the nonpreferred annuities must abate ratably, but the difficulty arises in the application of this principle, which may be epitomized in the familiar axiom that equality is equity.

The auditing judge said in his adjudication that the balance on hand, as ascertained by a revaluation of the securities, is to be divided by the aggregate of the pecuniary legacies, viz., $75,000, and that will give the percentage that each pecuniary bequest is entitled to and the percentage that each annuitant is entitled to, and that sufficient funds on a basis of three per cent. must be set aside for the payment of the reduced amount of the annuities.

Exceptions were filed by certain of the pecuniary legatees and annuitants to this method, which would appear to us to be uncertain and probably inequitable in its results.

Certain of the annuitants in their exceptions urged that, using the net estate as a numerator and the aggregate of the pecuniary legacies plus the capitalization of the annuities as a denominator, the balance for distribution should be divided between the pecuniary legacies and the annuity fund according to the resulting fraction, the fund thus set aside for the annuities being available for their payment until it is exhausted.

The Home Missionary Society, a pecuniary legatee, also filed exceptions, and on its behalf it was argued that the fund for distribution should be divided pro rata between the total of the pecuniary legacies and the total annuity fund capitalized at three per cent., according to the theory of the annuitants, with the further provision, however, that as each annuitant dies, the proportionate amount of the principal then released shall then be paid to the pecuniary legatees.

The auditing judge in his adjudication adverts to what appears to be the English rule, namely, that there should first be ascertained the present value of the annuities based upon the expectancy of life of the annuitants. The percentage to which the annuitants and the pecuniary legatees are entitled would be determined by adding the legacies and the present values of the annuities and dividing the balance for distribution pro rata among the legatees and the annuitants. See Todd *v.* Bielby, 27 Beav. 353, Heath *v.* Nugent, 29 Beav. 226, Re Wilkins, L. R. 27 Ch. Div. 703, and Tootal's Estate, L. R. 2 Ch. Div. 628, but none of these cases presents the exact question now before us. The auditing judge rejected the apparent theory of these cases, because it "does not carry out the intention of the testator that the pecuniary bequests shall be paid immediately and that the annuitants shall receive annual payments instead of a lump sum. There is the further objection that the annuitant will receive, in the event that he dies before the expiration of his expectancy of life, more than it was intended he should have, and that he will receive, if he outlives his expectancy of life, less than was intended." There is much force in the criticism of the auditing judge, but we are of opinion that the distribution awarded by him is open to a somewhat similar objection, and the theories proposed in these exceptions by the pecuniary legatees and the annuitants are also unsatisfactory. None of them complies with the rule of equality, and setting aside a capital sum on a three per cent. basis to secure reduced annuities might result unfairly to either the legatees or the annuitants, or perhaps to both. Of course, the testator intended or expected that his pecuniary legacies should be presently paid, but there is not enough to pay them. This always happens when an abatement is necessary.

It might, indeed, be convenient if the fund were presently divided among the pecuniary legatees and the annuitants, the present value of the annuities being calculated according to the expectations of life of the annuitants, but this could only be done by the agreement of all of them, and, moreover, the future receipts of other assets to which we have alluded cannot now be accurately determined. We feel, therefore, at liberty, in the absence of any controlling authority, to follow our own opinion upon this novel question, and have concluded to award the entire balance for distribution (after providing for the preferred legatees and preferred annuitants) to the trustee, who will distribute the income, as it accrues, pro rata among the legatees and the annuitants, whose annuities are virtually bequests of pecuniary legacies falling due annually. This works out equality among all parties. If the income increases, all get the benefit. If the income decreases, all share in the loss. And so, whether the securities appreciate in value or decrease, or if other assets are received, all share alike, for all of them get alike whatever there is. And as annuitants die, the annual fund for distribution will increase for the benefit of the legatees and the surviving annuitants. It may be added, carrying out the same doctrine of equality, that arrears of the annuities, and interest on unpaid portions of the legacies, will likewise be entitled to a dividend, but, of course, without any compounding of interest. If and when all the legacies are paid and the annuitants die, having received their annuities, the annuities of $125 per annum to the Mercantile Library and Franklin Chess Club will continue, but any questions relative to their cases may await the future.

The exceptions of the Mercantile Library and of the pecuniary legatees and of the annuitants are sustained pro forma, and the account is recommitted to the auditing judge for distribution in accordance with this opinion.